UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

NADINE THOMPSON,                      :

                    Plaintiff,    :    11 Civ. 6885 (DAB)(HBP)

    -against-                     :    OPINION
                                       AND ORDER
WORKMEN'S CIRCLE MULTICARE CENTER, :

                    Defendant.    :

-----------------------------------X


            PITMAN, United States Magistrate Judge:


I.   Introduction


            I write to resolve three pending discovery disputes:
(1) plaintiff's application to conduct a forensic examination of
defendant's computers, (2) defendant's motion to strike the
errata sheets to plaintiff's deposition, and (3) plaintiff's
motion for sanctions.

            For the reasons set forth below, (1) plaintiff's
application for forensic examination is granted in part and
denied in part, (2) defendant's motion to strike plaintiff's
errata sheets is granted in part and denied in part, and (3)
plaintiff's motion for sanctions is denied.

II.  Facts

        Plaintiff Nadine Thompson commenced this action pursu-
ant to the Americans with Disabilities Act, 42 U.S.C. §§ 12111-
17, alleging discrimination by defendant Workmen's Circle Multi-
care Center ("Workmen's Circle") on the basis of disability
(Complaint, dated September 27, 2011 (Docket Item 2) ("Compl.")
at 1),[1] and that she was constructively terminated (see Compl. at
8; Nadine Thompson's Letter to the Undersigned dated October 6,
2012 at 4).[2]  Plaintiff is proceeding pro se.

        Plaintiff was employed as a dietary aide at Workmen's
Circle (Compl. at 5).  She was injured on the job in April 2010
(Compl. at 5) and alleges that, on July 19, 2010, defendant
failed to accommodate her resulting disability (see Compl. at 2-
3).  Specifically, she alleges that although she was able to
return to work in a limited capacity, Workmen's Circle failed to
accommodate her disability by requiring that she be fully recov-
ered before returning to work (Compl. at 5).  In addition,
plaintiff contends that Workmen's Circle failed to engage in an
interactive process to determine whether it reasonably could have

---

        [1]Because plaintiff's Complaint is not serially paginated, I
use the page numbers assigned by the Court's ECF system.

        [2]This letter has not been filed on the Court's ECF system.
It will be filed simultaneously with this Order.

accommodated her disability (Compl. at 5).  It is not clear whether plaintiff contends that she was terminated on July 19, 2010 (see Compl. at 3 ("It is my best recollection that the alleged discriminatory acts occurred on:  7/19/2010."); Compl. at 6 (attached Equal Employment Opportunity Commission ("EEOC") letter finding that plaintiff submitted doctor's notes to defendant in March 2011)).  Plaintiff does not clearly state when she was terminated.

III.  The Remaining
      Discovery Disputes

      A.  Plaintiff's Application
          for Forensic Examination

          Plaintiff requests forensic examination of defendant's computers and other electronic equipment in order to obtain (1) verification of the authenticity of an email that was produced in paper form and (2) information regarding the chronology of edits made to her work assignments.[3]

---

[3]Plaintiff includes in her letters in support of her application the text of her discovery Requests 1, 2 and 3 that she submitted to defendant after a September 2012 conference in this matter.  Nevertheless, it appears that plaintiff's motion is seeking only forensic examination and that these Requests are part of her application for forensic examination.  They appear to list various equipment that plaintiff would like defendant to turn over for examination by a forensic technician.

1.  Forensic Examination
    Regarding the Email

Plaintiff contests the authenticity of an email pro-
duced during discovery.  The email purports to have been for-
warded by Arthur Cooperberg, Chief Financial Officer of Workmen's
Circle, to Elena Zaretsky, Workmen Circle's Director of Human
Resources, on April 14, 2011, re-transmitting an email he sent
her on July 19, 2010.  In the email, Mr. Cooperberg states that
he met with plaintiff on July 19, 2010, and that plaintiff had
produced a doctor's note stating that she could return to work in
a limited capacity.  Mr. Cooperberg states in the email that he
told plaintiff that the note was inconsistent with earlier notes
from her doctor, which stated that she was able to return to work
without any limitations.  He also wrote that the most recent note
did not "specify any restrictions or conditions she [sic] can
resume her work" (Email, annexed to Ravindra K. Shaw's Letter to
the Undersigned dated October 15, 2012).[4]  According to the
email, Mr. Cooperberg sent plaintiff home and did not permit her
to return to work that day.

---

[4]This letter has not been filed on the Court's ECF system.
It will be filed simultaneously with this Order.

4

Plaintiff contends that the hardcopy version of the email is "an attempt by the Defendant and its counsel to defraud the court" (Nadine Thompson's Letter to the Undersigned dated October 6, 2012 at 1) because she never met with Mr. Cooperberg on July 19, 2010.  She requests access to defendant's computers in order to verify whether the email was in fact sent by Mr. Cooperberg on July 19, 2010.

I held two conferences in which this issue was discussed, one on September 10, 2012 and one on October 2, 2012.  At both conferences I explained that before I could determine whether to grant plaintiff access to defendant's computers, she would need to obtain an expert forensic technician and submit a specific proposal identifying the expert, describing his credentials, and setting forth the precise nature of the inspection he intended to conduct.  I reiterated that I was expressing no opinion as to whether I would grant her such access.

In a letter dated October 6, 2012, plaintiff partially responded to my requests for additional information.  Plaintiff attached a resume of David S. Capelli, a digital forensic examiner, to her letter, but plaintiff did not include any information regarding what tests Mr. Capelli would perform.  In addition, plaintiff explicitly stated in her cover letter that she

had not yet decided which expert, if any, she would use for a forensic examination.[5]

Defendant, in its letter dated October 15, 2012, argued that plaintiff should not be granted access to defendant's computers because she did not identify the forensic examiner with certainty and did not describe the nature of the examination that would be performed.  Defendant also argued that a forensic examination of its computers is not warranted because there is no reason to believe the email at issue is not authentic.  Defendant also noted that plaintiff questioned Mr. Cooperberg about the events discussed in the email at his deposition and could have cross-examined Ms. Zaretsky, had she chosen to do so.  Defendant argued that forensic examination of defendant's computers would place an undue burden on defendant's privacy and confidentiality rights, and the electronic version of the email was deleted from both Mr. Cooperberg's and Ms. Zaretsky's mailboxes, meaning that it is no longer easily accessible.[6]

---

[5]Plaintiff further contends that any such decision would be confidential and subject to the work-product privilege.  This is not a correct statement of the law.  Disclosure of the identity of expert witnesses is required under the Federal Rules of Civil Procedure.  See Fed.R.Civ.P. 26(a)(2).

[6]Defendant states that after the email was printed but before plaintiff filed her complaint, Mr. Cooperberg and Ms. Zaretsky deleted all electronic correspondence between them because of a personal matter and inadvertently deleted this email in the process.

I deny plaintiff's application for forensic examination with respect to Mr. Cooperberg's email.  Despite ample opportunity, plaintiff has not complied with the requirements that I set forth at both conferences concerning this issue.  Although plaintiff submitted another letter to me concerning this issue in 2015, it remains unclear whether plaintiff has selected an expert forensic technician, and plaintiff has not provided a statement of what tests the expert would perform in the event that her application is granted.  As I stated previously, without this threshold information, it is inappropriate to grant plaintiff access to defendant's computers.  See Loving v. N'Namdi, 05 Civ. 7966 (JGK)(MHD), 2006 WL 3456311 at *1 (S.D.N.Y. Nov. 29, 2006) (Dolinger, M.J.) ("We are not inclined in any event to approve testing without a specification of purpose, methodology and time-frame.").

Even without the electronic information that she seeks, plaintiff remains free to testify to her version of the facts and to argue that she did not meet with Mr. Cooperberg on July 19, 2010.  While plaintiff did not question Mr. Cooperberg about the email at his deposition on August 30, 2012, plaintiff did question Mr. Cooperberg about the events that were documented in the email.  She was also asked about those events at her deposition.  Whether the meeting with Mr. Cooperberg occurred is

a factual matter that is properly resolved by a jury, if the case
goes on to trial.  I note further that plaintiff does not appear
to dispute that an employee of Workmen's Circle did meet with her
on July 19, 2010 and, at Mr. Cooperberg's direction, sent her
home because her doctor's note stated that she could only perform
light duty (Transcript of Plaintiff's Deposition, annexed to
Ravindra K. Shaw's Letter to the Undersigned dated February 17,
2015,[7] at 124; Plaintiff's Errata Sheets, annexed to Ravindra K.
Shaw's Letter to the Undersigned dated February 17, 2015).
Whether it was Mr. Cooperberg or another individual from Work-
men's Circle who met with plaintiff on July 19, 2010 does not
appear to be a critical question of fact in this case.  As agents
of Workmen's Circle, the action and statement of either Mr.
Cooperberg or another employee are attributable to defendant.

        Accordingly, I deny plaintiff's application for foren-
sic examination with respect to Mr. Cooperberg's email.

        2.  Chronology of Edits to
            Plaintiff's Job Description

        Plaintiff also seeks forensic examination of defen-
dant's computers in order to obtain information about modifica-

---

        [7]This letter has not previously been filed on the Court's
ECF system.  It will be filed simultaneously with this Order.

tions to the dietary aide's job description.  In discovery, defendant produced printouts of documents that contain descriptions of a dietary aide's job duties.  Plaintiff argues that these descriptions demonstrate that, at some point, the job duties of the dietary aide position changed.  Plaintiff contends that defendant altered the job duties with the intention of rendering her unable to perform the job because of her injury. Plaintiff seeks forensic examination of the electronic versions of the documents in order to determine the dates on which these changes were made.  She argues that the dates of these changes would show that the revisions to the dietary aide job assignments occurred after she requested "reasonable accommodation on July 19, 2010," although it is not clear whether she also seeks documentation of any revisions after her injury on April 27, 2010 (Nadine Thompson's Letter to the Undersigned dated October 6, 2012 at 4-5).  Plaintiff believes that the timing of the changes will show Workmen Circle's discriminatory intent.  Plaintiff does not describe the nature of the changes in job duties and offers no specifics showing that the requirements of her job became more rigorous such that she was unable to perform them.

     As discussed above, plaintiff has not met the threshold requirements for forensic examination of defendant's computers or other equipment because it is not clear that she has selected an

expert, and she has not specified what tests her expert would perform.

Nevertheless, the information plaintiff is seeking -- dates on which changes were made to her work assignments -- might be available without resorting to forensic testing. Defendant contends that it produced sixteen written job assignments in paper format during discovery. Based on defendant's submissions, it appears that defendant used Microsoft Word during the relevant time period, and my understanding is that if the "Track Changes" setting is engaged in that application, edits and the dates on which they are made are saved. If the electronic files of the documents produced that describe plaintiff's duties will disclose any edits to the job description and the dates on which they were made, from April 27, 2010 to the commencement of this lawsuit, defendant is to produce those electronic files within fourteen days of the date of this Order. If the electronic files do not contain such information, defendant is to produce the job de-scriptions in paper format, indicating the dates on which changes were made, from April 27, 2010 to the commencement of this lawsuit, if known, within fourteen days of the date of this Order. While the relevance of these dates that plaintiff seeks is thin -- whether discriminatory intent can be inferred from the timing of the changes to plaintiff's job description alone is

problematic -- the burden of producing the documents is <u>de minimis</u>.  <u>See</u> Fed.R.Civ.P. 26(b)(2)(C).

B.  <u>Errata Sheets</u>

Defendant has moved to strike the errata sheets plaintiff submitted concerning her deposition.

On September 10, 2012, plaintiff filed a motion seeking to exclude her deposition testimony, claiming that her deposition was improperly conducted.  Among other things, she argued that defendant's counsel intimidated her and ridiculed her.  On September 10, 2012, I held a conference in which this issue was discussed.  Plaintiff had not requested a copy of her deposition transcript prior to the conclusion of her deposition, as required by Fed.R.Civ.P. 30(e) as a prerequisite to making changes to deposition testimony.  I nevertheless directed defendant to provide plaintiff with a copy of her deposition and directed plaintiff to make her changes within fifteen days thereafter.

Defendant contends that it received plaintiff's errata sheets one week after they were due.  Plaintiff made over two hundred changes and objections to her deposition testimony on her errata sheets.  By letter dated November 2, 2012, defendant argues that these objections are waived and that the errata sheets should be excluded because the changes plaintiff made are

untimely and substantively improper.  By letter dated November
20, 2012, plaintiff explained that she did not include weekends
in her calculation of the fifteen days and asks that her changes
and objections not be stricken.

As a preliminary matter, I find that plaintiff's
failure to comply with the fifteen-day deadline that I set does
not result in waiver of the objections or preclusion of the
changes in her errata sheets.  While plaintiff's errata sheets
were late, they were only one week late.  Plaintiff is proceeding
pro se, and her lateness has not resulted in any prejudice to
defendant.

1.  Objections

Defendant next argues that plaintiff waived the objec-
tions in her errata sheets because they were raised after conclu-
sion of her deposition.  Defendant also contends that these
objections were not authorized by my order of September 10, 2012.

Most of plaintiff's supplemental objections read as
follows:

>  Objection - Defendant attempting to submit into evi-
>  dence a document regarding activities that are outside
>  of the scope of the July 19, 2010 ADA discrimination
>  case involving a constructive termination of the plain-
>  tiff from her employment with the Defendant.  Document
>  being submitted is not admissible evidence calculated
>  to lead to discovery relating to the July 19, 2010 ADA

12

discrimination case involving a constructive termina-
tion.  Activities following July 19, 2010 termination
are outside the timeframe of discrimination which
occurred on July 19, 2010.  This objection should be
noted and subsequent lines should be edited accord-
ingly.  August 29, 2011 is outside the timeframe for
case at hand.

                    *    *    *

Objection - Defendant attempting to ask questions to
the plaintiff witness regarding activities that are
outside the scope of the July 19, 2010 ADA case . . . .

                    *    *    *

Objection - This question is related to Page 200 - Line
14 to 25 and Page 202 - Line 4 which was responded to
with an objection.  This objection should be noted and
subsequent lines should be edited accordingly.

(Plaintiff's Errata Sheets, annexed to Ravindra K. Shaw's Letter

to the Undersigned, dated February 17, 2015).  Similarly, plain-

tiff also objects at points because she claims defendant was

asking about items that were not "in evidence," asking questions

that were not supported by any items "submitted into evidence,"

and asking about a document that was "not available" at the time

plaintiff claims defendant discriminated against her.

        Under Federal Rule of Civil Procedure 30, "[t]he

examination and cross-examination of a deponent proceed as they

would at trial under the Federal Rules of Evidence, except Rules

103 and 615."  Fed.R.Civ.P. 30(c).  Plaintiff's supplemental

objections are not cognizable objections under the Federal Rules

13

of Evidence.  To the extent that plaintiff's objections are objections to the admissibility or relevancy of testimony, these issues are not ripe for decision.  The relevancy and admissibility of deposition testimony will be determined by Judge Batts if the case goes to trial and if the testimony in issue is offered; plaintiff can assert her objections to admissibility at that time.

Plaintiff's remaining objections are that defense counsel badgered her, that certain questions were broad and unclear, and that certain questions defendant posed had previously been asked and answered.  The latter objection is not cognizable under the Federal Rules of Evidence either.  In any event, it is too late now to remedy any impropriety in the form of defendant's questions.  See Fed.R.Civ.P. 32(d)(3)(B).

Accordingly, I grant defendant's motion to strike plaintiff's objections in her errata sheets without prejudice to plaintiff's right to object to any portions of her deposition that may be offered in connection with a summary judgment motion or offered at trial.

2.   Changes in
      Plaintiff's Testimony

Defendant next argues that plaintiff's changes to her
deposition testimony are substantively improper and that they
should be stricken.  Defendant argues that plaintiff's changes to
her deposition testimony should not be permitted because plain-
tiff used the errata sheets to create a factual issue that was
not present in her deposition testimony.  Specifically, defendant
contends that while plaintiff initially stated at her deposition
that she met with Arthur Cooperberg on July 19, 2010, in her
changes to her deposition testimony she stated that she did not
meet with him on that date.[8]

I do not find this change to be a basis to exclude
plaintiff's errata sheets.  Rule 30(e) of the Federal Rules of
Civil Procedure permits a deponent to make changes to the form or
substance of her deposition testimony.  See Podell v. Citicorp
Diners Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997); In re

_____

[8]Plaintiff's deposition testimony is ambiguous on this
point.  Plaintiff did identify Mr. Cooperberg as having discrimi-
nated against her because he told her not to return to work until
she was fully recovered (Transcript of Plaintiff's Deposition,
annexed to Ravindra K. Shaw's Letter to the Undersigned dated
February 17, 2015, at 84).  However, she also testified that she
never saw Mr. Cooperberg (Transcript of Plaintiff's Deposition,
annexed to Ravindra K. Shaw's Letter to the Undersigned dated
February 17, 2015, at 130).

Weatherford Int'l Sec. Litig., 11 Civ. 1646 (LAK)(JCF), 2013 WL
4505259 at *4 (S.D.N.Y. Aug. 23, 2013) (Francis, M.J.) ("'Courts
in the Second Circuit construe Rule 30(e) broadly, permitting any
changes to the deposition to be considered as part of the record,
even where they contradict the original answers.'"), quoting
Samad Bros., Inc. v. Bokara Rug Co., 09 Civ. 5843, 2012 WL 43613
at *8 (S.D.N.Y. Jan. 9, 2012) (Keenan, D.J.).

      I further note that the changes plaintiff made on her
errata sheets will not have the effect of replacing or deleting
any of her deposition testimony.  As the Second Circuit has
stated:

> [W]hen a party amends h[er] testimony under Rule 30(e),
> "[t]he original answer to the deposition questions will
> remain part of the record and can be read at the
> trial." Id. (citing, inter alia, Usiak v. New York
> Tank Barge Co., 299 F.2d 808 (2d Cir. 1962)).  "Nothing
> in the language of Rule 30(e) requires or implies that
> the original answers are to be stricken when changes
> are made." Id. at 641-642.  This Court has recognized
> that because "[a]ny out-of-court statement by a party
> is an admission," a deponent's "original answer should
> [be] admitted [into evidence]" even when he amends his
> deposition testimony -- with the deponent "[o]f course
> . . . free to introduce the amended answer and explain
> the reasons for the change." Usiak, 299 F.2d at 810.

Podell v. Citicorp Diners Club, Inc., supra, 112 F.3d at 103
(first and second alteration added); see Toland v. Forest Labs.,
Inc., 00 Civ. 4179 (LAK), 2001 WL 30617 at *1 (S.D.N.Y. Jan. 11,
2001) (Kaplan, D.J.) ("Both the original and corrected answers

remain part of the record."); <u>see also</u> <u>Holland v. Cedar Creek</u>
<u>Mining, Inc.</u>, 198 F.R.D. 651, 653 (S.D. W. Va. 2001); <u>Metayer v.</u>
<u>PFL Life Ins. Co.</u>, No. CIV. 98-177-P-C, 1999 WL 33117063 at *3
(D. Me. July 15, 1999); <u>Innovative Mktg. & Tech. v. Norm Thompson</u>
<u>Outfitters, Inc.</u>, 171 F.R.D. 203, 205 (W.D. Tex. 1997).  Thus,
defendant remains free to submit plaintiff's original deposition
testimony into evidence; however, whether the deposition tran-
script or the errata sheets are controlling will be an issue for
the fact finder and is not a basis for striking plaintiff's
errata sheets.

Defendant also contends that plaintiff's changes should
not be permitted because the reasons she provides for changing
her testimony are not valid.  Specifically, defendant finds the
following language to be inadequate:  "Reason for change - I did
not get a chance to provide clarification during deposition" (<u>see</u>
Plaintiff's Errata Sheets, annexed to Ravindra K. Shaw's Letter
to the Undersigned, dated February 17, 2015).

While Rule 30(e) requires an explanation for changes to
deposition testimony, it does not require or contemplate judicial
scrutiny of the reasonableness of that explanation.

> A deponent invoking this [Rule 30(e)] privilege must
> "sign a statement reciting [any] changes and the rea-
> sons given . . . for making them," <u>id</u>., but "[t]he
> language of the Rule places no limitations on the type
> of changes that may be made[,] . . . nor does the Rule

> require a judge to examine the sufficiency, reasonable-
> ness, or legitimacy of the reasons for the changes" --
> even if those reasons "are unconvincing." <u>Lugtig v.
> Thomas</u>, 89 F.R.D. 639, 641 (N.D. Ill. 1981) (citations
> omitted).

<u>Podell v. Citicorp Diners Club, Inc.</u>, <u>supra</u>, 112 F.3d at 103

(first and second alterations added).  Therefore, plaintiff's

changes may not be excluded based on defendant's dissatisfaction

with the reasons she provided for her changes.

Accordingly, I deny defendant's motion to strike the

changes plaintiff made to her deposition testimony.

C.  Plaintiff's
    <u>Motion for Sanctions</u>

By letter dated March 10, 2015, plaintiff seeks sanc-

tions against defendant for failing to retain a surveillance

video.  Plaintiff contends that defendant was under an obligation

to retain a surveillance tape made on July 19, 2010, the day that

Mr. Cooperberg claims he met with plaintiff.  She believes that

the video will show that she did not meet with Mr. Cooperberg on

that day.

"Spoliation is the destruction or significant alter-

ation of evidence, or the failure to preserve property for

another's use as evidence in pending or reasonably foreseeable

litigation." <u>West v. Goodyear Tire & Rubber, Co.</u>, 167 F.3d 776,

779 (2d Cir. 1999).  A party who seeks sanctions based on the
spoliation of evidence must show:  "(1) that the party having
control over the evidence had an obligation to preserve it at the
time it was destroyed; (2) that the records were destroyed with a
culpable state of mind and (3) that the destroyed evidence was
relevant to the party's claim or defense such that a reasonable
trier of fact could find that it would support that claim or
defense."  Zubulake v. UBS Warburg, LLC, 229 F.R.D. 422, 430
(S.D.N.Y. 2004) (Scheindlin, D.J.) (internal quotation marks
omitted); see also Chin v. Port Auth. of N.Y. & N.J., 685 F.3d
135, 162 (2d Cir. 2012).

        "A litigant has the 'duty to preserve what it knows, or
reasonably should know, is relevant in the action, is reasonably
calculated to lead to the discovery of admissible evidence, is
reasonably likely to be requested during discovery and/or is the
subject of a pending discovery request.'"  Passlogix, Inc. v. 2FA
Tech., LLC, 708 F. Supp. 2d 378, 409 (S.D.N.Y. 2010) (Leisure,
D.J.), quoting Turner v. Hudson Transit Lines, Inc., 142 F.R.D.
68, 72 (S.D.N.Y. 1991) (Francis, M.J.).  The "'[o]bligation to
preserve evidence arises when the party has notice that the
evidence is relevant to litigation . . . for example when a party
should have known that the evidence may be relevant to future
litigation.'"  Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem.

19

<u>Co.</u>, 769 F. Supp. 2d 269, 289 (S.D.N.Y. 2011) (Francis, M.J.)
(second alteration in original), <u>quoting</u> <u>Kronisch v. United</u>
<u>States</u>, 150 F.3d 112, 126 (2d Cir. 1998), <u>overruled</u> <u>on</u> <u>other</u>
<u>grounds</u>, <u>Rotella v. Wood</u>, 528 U.S. 549 (2000).  "The duty to
preserve arises, not when litigation is certain, but rather when
it is 'reasonably foreseeable.'"  <u>Alter v. Rocky Point Sch.</u>
<u>Dist.</u>, 13-1100 (JS)(AKT), 2014 WL 4966119 at *8 (E.D.N.Y. Sept.
30, 2014), <u>quoting</u> <u>Byrnie v. Town of Cromwell, Bd. of Educ.</u>, 243
F.3d 93, 107 (2d Cir. 2001).

        Production of the surveillance tape was discussed in a
conference I held on October 2, 2012.  Defendant stated, as it
had in its interrogatory responses, that it no longer had the
surveillance tape because its system automatically overwrites
recordings after four months.  Plaintiff contended that Mr.
Cooperberg, at his deposition, testified to the contrary, stating
that the surveillance video was backed up on disks.  At that time
I told plaintiff that I needed to review the deposition testimony
before rendering a decision on this issue.

        Plaintiff submitted the transcript of her deposition of
Mr. Coopenberg with her March 2015 letter.  At his deposition,
Mr. Cooperberg stated that the surveillance video no longer
existed because the cameras overwrite the tape after three
months.  Plaintiff asked him what would happen if a person

injured themselves in front of one of the cameras.  Mr.
Cooperberg stated that in that situation, defendant would put the
video onto a disk and store the disk.

Here, while defendant may have been on notice that
litigation was reasonably foreseeable when plaintiff filed a
claim with the EEOC, and while it appears that the surveillance
tape was still available at that time,[9] thus triggering its duty
to retain potential evidence for litigation, the connection
between the surveillance video and plaintiff's claim is simply
too attenuated to permit a finding that defendant had a duty to
preserve the tape.

"'[A] litigant is under no duty to keep or retain every
document in its possession.'"  Zubulake v. UBS Warburg LLC,
supra, 220 F.R.D. at 217, quoting Turner v. Hudson Transit Lines,
Inc., supra, 142 F.R.D. at 72.  Plaintiff appears to seek a
surveillance tape of the area of the building where Mr. Cooper-
berg claims he met with her on July 19, 2010 in order to prove
that she was not in that location on that date.  Plaintiff's

---

[9]Neither side's letters identify the date that plaintiff
submitted a claim to the EEOC or the date that the EEOC notified
defendant that plaintiff had submitted a claim.  Plaintiff
contends that defendant had notice of her EEOC complaint between
September 2010 and December 2010, and her Complaint states that
she filed a charge with the EEOC on October 22, 2010 (Compl. at
3).

allegations in this case are based on defendant's failure to accommodate her disability by offering her a position that she was physically capable of performing.  She has provided no explanation why such allegations would put defendant on notice that it should retain a surveillance tape of the day plaintiff claims she was told that there were no light duty jobs at Workmen's Circle for which she was qualified.  Plaintiff has not alleged that she was involved in an altercation, an accident or similar occurrence on that date.  Plaintiff also does not appear to contend that she was terminated on that date.

Workmen's Circle simply could not have foreseen that such surveillance tape was "'reasonably likely to be requested during discovery.'"  Passlogix, Inc. v. 2FA Tech., LLC, supra, 708 F. Supp. 2d at 409, quoting Turner v. Hudson Transit Lines, Inc., supra, 142 F.R.D. at 72.  Given that plaintiff's discrimination claim, as stated in her EEOC charge, appears to rest largely on various doctor's notes, conversations with staff at Workmen's Circle, and available job positions, there is nothing that would have led defendant to believe it was important to retain the surveillance tape that plaintiff seeks.  Again, whether plaintiff met with Mr. Cooperberg on July 19, 2010 does not appear to be a critical issue in this case.

I also note that plaintiff did not commence this lawsuit until September 27, 2011, and, therefore, defendant could not have been put on notice to retain the surveillance video pursuant to a specific discovery request for the tape.

Further, contrary to plaintiff's contention, Mr. Cooperberg's deposition testimony does not suggest that the surveillance tape that plaintiff seeks was retained on a disk.[10] Plaintiff does not seek video of her injury. Plaintiff appears to seek a surveillance tape that essentially shows an empty hallway or conference room.

Accordingly, I deny plaintiff's motion for sanctions.

## IV.  Conclusion

Accordingly, for all the foregoing reasons, I grant in part and deny in part plaintiff's motion for forensic examination.  If the electronic files of the dietary aide job descriptions show changes made from April 27, 2010 to the date of the filing of this lawsuit, and the dates on which those changes were made, defendant is to produce those electronic files within fourteen days of the date of this Order.  If the electronic files

---

[10]Plaintiff also contends that defendant lied because Mr. Cooperberg stated that the video was retained for three months while defendant's counsel stated that the video was retained for four months.  This one month difference is immaterial.

23

of the dietary aide job descriptions do not show such changes and dates, defendant is to produce the dietary aide work assignments in paper format within fourteen days of the date of this Order, and indicate the dates that the various versions were applicable, if known.

I also grant defendant's motion to strike plaintiff's errata sheets with respect to her objections, without prejudice to plaintiff's right to object to any portions of her deposition that may be offered in connection with a summary judgment motion or offered at trial, and I deny defendant's motion to strike plaintiff's errata sheets with respect to her changes.

Lastly, I deny plaintiff's motion for sanctions.

Dated:  New York, New York
        June 9, 2015

                                SO ORDERED

                                HENRY PITMAN
                                United States Magistrate Judge


Copies mailed to:

Ms. Nadine Thompson
137 Beechwood Avenue
Mount Vernon, New York 10553

24

Eric P. Simon, Esq.
Ravindra K. Shaw, Esq.
Jackson Lewis LLP
666 Third Avenue, 29th Floor
New York, New York 10017

Representing Management Exclusively in Workplace Law and Related Litigation

 **jackson|lewis**

Attorneys at Law

| | | | |
|---|---|---|---|
| Jackson Lewis LLP | ALBANY, NY | GREENVILLE, SC | MORRISTOWN, NJ | PORTSMOUTH, NH |
| 666 Third Avenue | ALBUQUERQUE, NM | HARTFORD, CT | NEW ORLEANS, LA | PROVIDENCE, RI |
| New York, New York 10017-4030 | ATLANTA, GA | HOUSTON, TX | NEW YORK, NY | RALEIGH-DURHAM, NC |
| Tel 212846-4000 | AUSTIN, TX | INDIANAPOLIS, IN | NAPA, CA | RICHMOND, VA |
| Fax 212972-3213 | BALTIMORE, MD | JACKSONVILLE, FL | NORFOLK, VA | SACRAMENTO, CA |
| www.jacksonlewis.com | BIRMINGHAM, AL | LAS VEGAS, NV | OMAHA, NE | ST. LOUIS, MO |
| | BOSTON, MA | LONG ISLAND, NY | ORANGE COUNTY, CA | SAN DIEGO, CA |
| | CHICAGO, IL | LOS ANGELES, CA | ORLANDO, FL | SAN FRANCISCO, CA |
| | CINCINNATI, OH | MEMPHIS, TN | PHILADELPHIA, PA | SEATTLE, WA |
| | CLEVELAND, OH | MIAMI, FL | PHOENIX, AZ | STAMFORD, CT |
| | DALLAS, TX | MILWAUKEE, WI | PITTSBURGH, PA | WASHINGTON DC REGION |
| | DENVER, CO | MINNEAPOLIS, MN | PORTLAND, OR | WHITE PLAINS, NY |
| | DETROIT, MI | | | |

DIRECT DIAL: 212-5454041
EMAIL ADDRESS: SHAWR@JACKSONLEWIS.COM

# FAX

| | |
|---|---|
| **To:** | Honorable Henry B. Pitman |
| **Company:** | United States District Court |
| | Southern District of New York |
| **Fax:** | 212-805-6111 |
| **From:** | Ravindra K. Shaw |
| **Subject:** | Nadine Thompson v. Workmen's Circle MultiCare Center |
| | S.D.N.Y. Case No. 11 CV 6885 (DAB) (HBP) |
| **Date:** | October 15, 2012 |
| **Pages:** | 10 |
| **Original:** | _____ Will Follow      ✓ Will Not Follow |

**Please contact if there are any problems with this transmission.**

**Confidentiality Note:** This facsimile contains privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this facsimile is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

Representing Management Exclusively in Workplace Law and Related Litigation



| | | |
|---|---|---|
| Jackson Lewis LLP | ALBANY, NY | DENVER, CO |
| 666 Third Avenue | ALBUQUERQUE, NM | DETROIT, MI |
| New York, New York 10017 | ATLANTA, GA | GREENVILLE, SC |
| Tel 212 545-4000 | AUSTIN, TX | HARTFORD, CT |
| Fax 212 972-3213 | BALTIMORE, MD | HOUSTON, TX |
| www.jacksonlewis.com | BIRMINGHAM, AL | INDIANAPOLIS, IN |
| | BOSTON, MA | JACKSONVILLE, FL |
| | CHICAGO, IL | LAS VEGAS, NV |
| | CINCINNATI, OH | LONG ISLAND, NY |
| | CLEVELAND, OH | LOS ANGELES, CA |
| | DALLAS, TX | MEMPHIS, TN |
| | | MIAMI, FL |

MILWAUKEE, WI · MINNEAPOLIS, MN · MORRISTOWN, NJ · NEW ORLEANS, LA · NEW YORK, NY · NORFOLK, VA · OMAHA, NE · ORANGE COUNTY, CA · ORLANDO, FL · PHILADELPHIA, PA · PHOENIX, AZ · PITTSBURGH, PA

PORTLAND, OR · PORTSMOUTH, NH · PROVIDENCE, RI · RALEIGH-DURHAM, NC · RICHMOND, VA · SACRAMENTO, CA · SAN DIEGO, CA · SAN FRANCISCO, CA · SEATTLE, WA · STAMFORD, CT · WASHINGTON, DC REGION · WHITE PLAINS, NY

MY DIRECT DIAL IS: (212) 545-4041
MY EMAIL ADDRESS IS: SHAWR@JACKSONLEWIS.COM

October 15, 2012

**VIA FACSIMILE (212) 805-6111**
Honorable Henry B. Pitman
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   Nadine Thompson v. Workmen's Circle MultiCare Center
      S.D.N.Y. Case No. 11 CV 6885 (DAB) (HBP)

Dear Judge Pitman:

We represent Defendant Workmen's Circle MultiCare Center in the above-referenced employment discrimination case. Please note that Plaintiff is proceeding *pro se*. We submit this letter in opposition to Plaintiff's twenty-page "Motion for Court Order to Compel Defendant Workmen's Circle to Produce Evidence As Requested By Plaintiff Under the Conditions Of Which Were Set By the Court 9/10/2012 and 10/02/2012," which we are advised was faxed to the Court on Monday, October 8, 2012.

Based on our understanding of the issues that have been inartfully presented,[1] we respectfully submit that Plaintiff's Motion should be denied in its entirety for the reasons described below.

I.    **Plaintiff Has Not Complied With The Court's Prior Discovery Rulings and Mischaracterizes The Rulings.**

Plaintiff claims that during the September 10, 2012 and October 2, 2012 discovery conferences, the Court ruled that Defendant should comply with her requests to subpoena certain electronic equipment and that the Court granted her permission to conduct a forensic investigation. The Court did no such thing. At both conferences, the Court explained to Plaintiff that requiring a forensic examination is not an undertaking to be taken lightly and it directed Plaintiff to provide a written submission explaining the identity of her proposed forensic examiner, his or her qualifications, and the nature and scope of the forensic examination, all of which the Court would duly consider after receiving Defendant's response to her submission.

---

[1]      We note, for example, that portions of Plaintiff's Motion appear to be cut-and-pasted from other discovery documents incorrectly.



Plaintiff has failed to comply with the Court's ruling. Plaintiff has submitted a blank unsigned agreement for computer forensic services with Placido Verna Ltd. Even assuming that Plaintiff has formally engaged this forensic examiner, Plaintiff has not explained what *precisely* the examiner proposes to do with Defendant's computers and electronic equipment (i.e., what methodologies, tests, and equipment will be utilized) and what precautions will be taken. Instead, Plaintiff has submitted a blank Preliminary Examination Checklist. Accordingly, Plaintiff's Motion should be denied for failing to provide sufficient information.

## II.   Plaintiff Has Not Demonstrated That A Forensic Examination Is Warranted.

Plaintiff apparently seeks to conduct an extensive forensic review of Defendant's computers, storage media, servers, and other electronic equipment. However, the Advisory Committee on the 2006 Amendment to Fed. R. Civ. P. 34(a) has stated that:

> Inspection or testing of certain types of electronically stored information or of a responding party's electronic information system may raise issues of confidentiality or privacy. The addition of testing and sampling to Rule 34(a) with regard to documents and electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems.

Rule 26(b)(2)(C) authorizes a court to curtail discovery where (i) "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"; (ii) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action" or (iii) "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

Plaintiff apparently seeks a forensic review to investigate the circumstances surrounding the preparation of an April 14, 2011 e-mail and the preparation of written job assignments for Plaintiff's dietary aide position. Plaintiff has not shown that a forensic examination is necessary in either case.

### A.   The April 14, 2011 E-mail Printout

Plaintiff claims she needs a forensic review because a printout of an April 14, 2011 e-mail from Defendant's Chief Financial Officer Arthur Cooperberg to its Human Resources Director Elena Zaretsky "could be an attempt by the Defendant and its counsel to defraud the court." The printout was produced in discovery and Bates-numbered D000287-288. A true and



correct copy is attached hereto. The April 14, 2011 e-mail re-sends a prior July 19, 2010 e-mail that Mr. Cooperberg sent to Ms. Zaretsky detailing what occurred and what was said during a meeting he had with Plaintiff on July 19, 2010 when she attempted to return to work after she suffered an injury on April 27, 2010.

Plaintiff has not provided the Court with any reason to believe that the April 14, 2011 e-mail printout is fraudulent. The mere fact that the document "could have been created fraudulently" does not give Plaintiff a license to rummage through Defendant's computer equipment and systems in the hope that she may uncover fraud. Plaintiff has offered no reason to believe that Defendant altered or tampered with the April 14, 2011 and July 19, 2010 e-mails before the printout was made. Nor has Plaintiff explained how a forensic examination will reveal that the e-mails are not "real" or that the date and time stamps on the e-mails are unreliable.

Defendant is fully prepared to proffer evidence of the printout's authenticity. Mr. Cooperberg will testify under oath that he created and sent the April 14, 2011 and July 19, 2010 e-mails to Ms. Zaretsky. Ms. Zaretsky will testify under oath that she received these e-mails. Both individuals will further testify that the printout fairly and accurately represents the e-mails that Mr. Cooperberg sent to Ms. Zaretsky. That is all that is required to authenticate the contents of the printout. See Fed. R. Evid. 901(b)(1); Lorraine v. Markel Am. Ins. Co., 241 F.R.D. 534, 545, 554 (D. Md. 2007).

Plaintiff apparently seeks to obtain electronic versions of the April 14, 2011 and July 19, 2010 e-mails but does not explain how or why she needs to do so. It is well settled that an accurate printout of data stored on a computer is an "original." See Fed. R. Evid. 1001(d). Regardless, the printout is of limited importance with respect to the broader issue of whether Defendant violated the Americans With Disabilities Act. Neither the preparation of the e-mails nor their contents are direct evidence of discriminatory or illegal conduct. Mr. Cooperberg and Ms. Zaretsky's computer-related activities are not directly in issue, as would be the case where an employee improperly accessed, copied, and/or transmitted trade secrets from a computer. Employers frequently document employee issues contemporaneously, lest a court deem explanations of their decisions after the fact self-serving and unworthy of belief. Here, the e-mails reflect contemporaneous documentation of an already completed event – namely, the July 19, 2010 conversation between Plaintiff and Mr. Cooperberg. Plaintiff fully explored the substance of the printout – the July 19, 2010 conversation – during Mr. Cooperberg's deposition. Consistent with the content of his July 19, 2010 e-mail, Mr. Cooperberg testified as to what was said between Plaintiff and him on July 19th. The April 14, 2011 e-mail printout merely corroborates Mr. Cooperberg's testimonial evidence. If Plaintiff's motion for a forensic review is denied, she remains free to dispute Mr. Cooperberg's testimonial and documented version of events. Given the availability of the printout and Mr. Cooperberg's deposition testimony, Plaintiff's request for a forensic review should be deemed unreasonably cumulative or duplicative under Fed. R. Civ. P. 26(b)(2)(C)(i) because it is unlikely to have any evidentiary value.



Honorable Henry B. Pitman
United States District Court
Southern District of New York
October 15, 2012
Page 4

Plaintiff had ample opportunity to cross-examine Mr. Cooperberg and Ms. Zaretsky about any concerns she may have had about the authenticity of the printout. She failed to do so. In response to the Court's questions at the September 10, 2012 discovery conference, Plaintiff acknowledged that she had informed me that she no longer needed Ms. Zaretsky's deposition and she conceded that she did not ask Mr. Cooperberg about the printout when she took his deposition on August 30, 2012. Accordingly, Plaintiff's request for a forensic review should be denied under Fed. R. Civ. P. 26(b)(2)(C)(ii) because she failed to avail herself of the most practical means of obtaining information about the April 14, 2011 and July 19, 2010 e-mails.

Plaintiff's request for a forensic review is also an undue burden on Defendant's confidentiality and privacy rights. Defendant operates a nursing home and its computers contain health information protected by HIPAA as well as attorney-client privileged communications. Granting Plaintiff's forensic examiner *carte blanche* access to Defendant's computer systems would be extraordinary intrusive relief when no need for a forensic review has been demonstrated. The amount in controversy is relatively low, given that Plaintiff earned an hourly wage rate of $17.34 per hour for a thirty-five hour workweek (i.e., roughly $32,000 per year). Accordingly, Plaintiff's request for a forensic review should be denied under Fed. R. Civ. P. 26(b)(2)(C)(iii) because the burden of the forensic review outweighs its likely benefit given the needs of the case and the amount in issue.

Finally, the Court should know that permitting a forensic review is likely to be a fruitless endeavor. I am advised that the electronic versions of the April 14, 2011 and July 19, 2010 e-mails from Mr. Cooperberg to Ms. Zaretsky are no longer reasonably accessible. I am further advised that after Mr. Cooperberg's April 14, 2011 e-mail was printed but before Plaintiff's filing of her Complaint in this case, Mr. Cooperberg and Ms. Zaretsky, who are friends as well as colleagues, deleted all of the e-mails that they had sent to or received from each other because many of them concerned a personal issue wholly unrelated to Plaintiff's allegations. Unfortunately, the electronic versions of the April 14, 2011 and July 19, 2010 e-mails from Mr. Cooperberg to Ms. Zaretsky regarding Plaintiff were among the e-mails that were inadvertently lost. Nonetheless, as discussed above, Defendant respectfully submits that the electronic versions of the e-mails would be unreasonably cumulative, given the availability of the printout and Mr. Cooperberg's testimonial evidence.

### B. The Job Assignments for the Dietary Aide Position

Plaintiff apparently claims she needs a forensic review because of revisions that were made to job assignments for her dietary aide position. I am advised that in or about February or March 2010, Defendant implemented a new system of serving food to nursing home residents. Dietary aides' job assignments were rewritten for the new system. There are sixteen (16) written job assignments identifying particular tasks that an assigned dietary aide is required to perform during a particular time interval (e.g., punch in wearing uniform at 11:30 a.m.). Defendant provided each dietary aide (including Plaintiff) with a written description of his or her job assignment when it implemented the new system and informed. Defendant also informed the dietary aides that job assignments may change after evaluating how the new system was



Honorable Henry B. Pitman
United States District Court
Southern District of New York
October 15, 2012
Page 5

working.  During the first half of 2010, Defendant revised its written job assignments.  In some cases, Defendant revised the description of tasks that the dietary aide is required to perform. Defendant also added a "Duties and Responsibilities" and "Physical Demands" section to each and every one of the sixteen (16) written job assignments.  The job tasks and functions performed by Plaintiff before her April 27, 2010 injury are set forth in a document entitled "Assignment 4 11:30am-7:30pm," a true and correct copy of which is attached hereto. Defendant is not in possession of any prior versions of this document because they were overwritten.  Hard copies of all of the sixteen (16) written job assignments were produced in discovery.

Plaintiff apparently seeks a forensic review to obtain electronic versions of the job assignments because she believes they "would contain at least the time and date stamps for when a document was created and modified[.]"  I am advised by Defendant that the electronic versions of the sixteen (16) written job assignments are each located in a separate Microsoft Word file and that when each file is viewed in Windows Explorer, the "Date Modified" field for each file reflects a date in 2012, which was apparently the last date the document was modified.  Based on my brief discussion with a forensic consultant, I understand that if an individual using Microsoft Word does not use the "Track Changes" feature in the program or save different versions of the document as it is being revised, a forensic examination of the file will only reveal the "last accessed" date, "last modified" date, and "last saved" date.  In short, a forensic examination in this case will not reveal every date that the Microsoft Word document was modified and what specific changes were made on each date.  Indeed, Plaintiff has made no showing that a forensic examination will yield that information, which is apparently the information she seeks.

Plaintiff claims she needs a forensic review to "prove that the Defendant willfully changed the assignments in order to implement essential functions that were not a part of the assignments prior to the Plaintiff's request for reasonable accommodation on July 19, 2010, so that Defendant could make the argument that the Plaintiff was not qualified under the ADA of 1990."  Defendant denies making any changes to its job assignments based on Plaintiff's circumstances.  Regardless, Plaintiff fails to explain how a forensic examination of Defendant's computers, storage media, servers, and other electronic equipment will reveal what changes were made to the written job assignments and when they were made.  Such a forensic review amounts to an uncharted fishing expedition.  Moreover, Plaintiff has made virtually no effort to explore any issues regarding the job assignments through less intrusive means, such as depositions.

Although Defendant opposes a wide-ranging forensic examination of its computers, Defendant is willing to produce electronic copies of the Microsoft Word files containing the written job assignments for Plaintiff to examine forensically, provided that Plaintiff makes a showing that her proposed forensic review will yield information regarding what particular changes were made to the written job assignments and when they were made.

\*       \*       \*

Thank you for your attention to this matter.



**jackson|lewis**

Attorneys at Law

Honorable Henry B. Pitman
United States District Court
Southern District of New York
October 15, 2012
Page 6

Very truly yours,

JACKSON LEWIS LLP

Ravindra K. Shaw

Attachments
cc:     Nadine Thompson (via e-mail and overnight mail)
        Eric P. Simon, Esq. (via e-mail)

4829-4864-1809, v. 1

Elena Zaretsky

**From:** Arthur Cooperberg
**Sent:** Thursday, April 14, 2011 4:25 PM
**To:** Elena Zaretsky
**Subject:** FW: Nadine

Please see below and attached email

Thank you,

Arthur Cooperberg
Chief Financial Officer
Workmen's Circle MultiCare Center
3155 Grace Ave.
Bronx, New York 10469
718-379-8100 ext. 450
718-379-0825 Fax

This email may contain confidential information. If you are not the intended recipient (or have received this in error) please destroy this email and notify the sender immediately.

From: Arthur Cooperberg
Sent: Monday , July 19 , 2010 4:09 PM
To: Elena Zaretsky
Subject: Nadine

Elena, In your absence I met with Nadine Thompson today, she presented me with a doctors note to return to work( light duty ). I sent her home and told her the doctors note is inconsistent with her previous medical notes, as the others stated she can come back to work full - duty. I mentioned to her that this note, which totally differs from the other medical notes, does not specify any restrictions or conditions she can resume her work.

Arthur Cooperberg
Chief Financial Officer
Workmen's Circle MultiCare Center
3155 Grace Ave.
Bronx, New York 10469
718-379-8100 ext. 450
718-379-0825 Fax

This email may contain confidential information. If you are not the intended recipient (or have received this in error) please destroy this email and notify the sender immediately.

### Assignment 4
### 11:30am-7:30pm

| | |
|---|---|
| 11:30am | Punch in wearing uniform |
| 11:30am – 12:00pm | Put all supplement cans for 2pm and 7pm on top of food trucks |
| 12:00pm-1:30pm | Set up trays and label all sandwiches and other snacks for 2:30pm nourishments |
| 1:30pm-2:00pm | Strip four lunch trucks |
| 2:00pm – 2:30 pm | Put on ice cream as needed, and deliver all nourishments and supplements to all units |
| 2:30pm-3:15pm | Label 7:30pm sandwiches, and set up assigned meal trucks |
| 3:15pm – 3:30pm | Break I |
| 3:30pm-4:30pm | Lunch |
| 4:30pm-4:45pm | Put 7:30pm sandwiches on top of food trucks, and resume setting up your assigned north and south side trucks |
| 4:45pm – 5:00pm | Gather all serving utensils and report to the south side unit; plug in steam table and start serving |
| 5:00pm-5:30pm | Start serving the south side unit |
| 5:30pm-6:00pm | Start serving the north side unit |
| 6:00 pm – 6:30 pm | Bring down steam table, clean, take all empty pots and pans to the pot room area, and store steam table in storage area |
| 6:30pm-7:15pm | Label 10am, 2:30pm, and 7:30pm supplement cans for the next day |
| 7:15pm – 7:30 pm | Break II |
| 7:30 pm | Punch out |

**DUTIES AND RESPONSIBILITIES:**

1. Responsible for the preparation of supplements, and nourishment and providing them to the floors.
2. Responsible for the serving the food using proper standards of portion control according to prescribed diet.
3. Works in harmony with other employees in area, to establish cooperation and better performance.
4. Responsible for keeping the working area neat and clean.

**PHYSICAL DEMANDS:**

-Able to stand, walk all working day
-Able to lift, stack, reach for any items and utensils
-Able to move the trucks
-Walk on all surfaces and withstand in temperature (from kitchen to refrigerator)



D000232

```
┌─────────────────────────────────────────┐
│  TRANSMISSION VERIFICATION REPORT         │
└─────────────────────────────────────────┘
```

```
                              TIME   : 10/15/2012 16:43
                              NAME   : JACKSON LEWIS LLP
                              FAX    : 2125454079
                              TEL    :
                              SER.# : BROJ8J866906
```

```
┌──────────────────────────────────────────────────────────────────────┐
│                                                                        │
│       DATE,TIME                      10/15  16:41                       │
│       FAX NO./NAME                   912128056111                       │
│       DURATION                       00:01:57                           │
│       PAGE(S)                        10                                 │
│       RESULT                         OK                                 │
│       MODE                           STANDARD                           │
│                                      ECM                                │
│                                                                        │
└──────────────────────────────────────────────────────────────────────┘
```



Nadine Thompson

137 Beechwood Avenue

Mount Vernon, NY 10553

646-387-4580

**VIA FACSIMILE (212) 805-6111**
Honorable Henry B. Pitman
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   Nadine Thompson v. Workmen's Circle MultiCare Center
S.D.N.Y, Case No. 11 CV 6885 (DAB) (HBP)

Dear Judge Pitman:

I am reaching out to the court requesting for motions against the Defendant, since the Defendant has refused to cooperate with the Plaintiff's request for disclosure or production of evidence. Please find the attach motion to compel the Defendant or impose sanction pursuant to the rules 26, 29, 33, 37, and 45. Your honor, my sincerest apologies as it was my intent to fax this motion to you on Friday October 5, 2012, but had gotten caught up and was not able. Your honor, you instructed me to provide information for the prospective computer forensic examiner to the Defendant, and I will do so with Objection on the grounds the premature disclosure of prospective expert's identity is in violation of Code of Civil Procedure sections 2034.210, 2034.220, and 2034.270. The court's request also infringes on Plaintiff (attorney) work-product in violation of Code of Civil Procedure sections 2018.020 and 2018.030 – The Plaintiff is her own attorney in this proceeding, and reserves the same rights as the civil code has directed to attorneys. Plaintiff has not decided on which, if any, expert witnesses may be used for the Computer Forensic Examination; insofar as this request seeks to ascertain to the Defendant the identity and qualifications of plaintiffs prospective experts who might be retained or utilized solely as an advisor or consultant, it is violative of the work-product privilege. (See *South Tahoe Public Utilities District* v. *Superior Court* (1979) 90 Cal.App.3d 135 [154 Cal.Rptr. 1]; *Sheets* v. *Superior Court* (1967) 257 Cal.App.2d 1 [64 Cal.Rptr. 753]; *and Sanders* v. *Superior Court,* (1973) 34 Cal.App.3d 270 [109 Cal. Rptr. 770].)"

If "It is improper for an interrogatory to seek either the identity, writings or the opinions of an expert prior to the exchange of expert witnesses, should it also not be improper for the Plaintiff in a Prose Civil Proceeding to be instructed by the court to provide such information to the Defendant Workmen Circle MultiCare? See *South Tahoe Public Utilities District* v. *Superior Court* (1979) 90 Cal.App.3d 135, [154 Cal.Rptr. 1]. Since the work-product protection includes the work-product of an attorney's employees and agents, it includes the opinions of employees and agents. *(Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 647-648. [151 Cal.Rptr. 399, 410- 411].). The Plaintiff is not bound by any laws to provide information on a prospective examiner. The Defendant should be instructed not to make any contacts or attempt to contact the prospective examiner as such actions can, should, and would be considered potential witness and evidence tampering.

Respectfully,

Nadine Thompson

*Nadine Thompson*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NADINE THOMPSON,

                Plaintiff,

       -against-

WORKMEN'S CIRCLE MULTICARE
CENTER,

                Defendant.

Case No.: 11 cv 6885 (DAB) (HP)
Honorable Henry B. Pitman

**PLAINTIFF NADINE THOMPSON
MOTION FOR COURT ORDER TO
COMPEL DEFENDANT WORKMEN'S
CIRCLE MULTICARE TO PRODUCE
EVIDENCE AS REQUESTED BY
PLAINTIFF UNDER THE CONDITIONS
OF WHICH WERE SET BY THE COURT
9/10/2012 AND 10/02/2012.**

        On September 15, 2012, the Defendant Workmen's Circle MultiCare was served with a subpoena by the Plaintiff Nadine Thompson to produce documents generated by Elena Zaretsky, Arthur Cooperberg, and Slawomir Filipczuk on any computers, computer systems assigned to such individuals, as named above, by the Defendant Workmen's Circle MultiCare. Additionally, to produce such computers, hard drives, floppy discs, CDS, Thumb Drives, Memory Sticks, Flash Drives, External Hard Drives, Databases, Servers used by such individuals to create, record, modify, send, receive, read, play, store, and delete documents, emails, and videos between the dates of April 27th, 2010 and present. The following requests were tailored to be very specific to the equipments, systems, documents, and persons. The court will find that each request was made in good faith in order to obtain evidence that are within the possession of the Defendant, but the Plaintiff has deemed material to proving her case against the Defendant. The courts has, in two separate conferences (September 10, 2012 and October 2, 2012) ruled that the Defendant should comply with the requests, and produce the evidence as requested, however, the Defendant is adamant that it will not produce such evidence to the Plaintiff even under the conditions which the court has approved such evidence to be produced.

        The Plaintiff has demonstrated that an alleged email (Defendant exhibit **D000287**) exchanged between Arthur Cooperberg and Elena Zaretsky, representatives of the Defendant, could be an attempt by the Defendant and its counsel to defraud the court and the Plaintiff; this alleged exchange of emails occurred between July 19, 2010 and April 14, 2011. The alleged email was produced as evidence by the Defendant during discovery on August 24, 2012, and on September 2, 2012 a letter was sent to the court alerting the court about the alleged document fraud; on September 10, 2012 the court observed the demonstration that the document could have been created fraudulently and may actually not be a real email. Therefore, contrary to the objection of the Defendant, the production of the information on paper is not reasonable nor appropriate, and since the Defendant's Counsel also observed the demonstration

Page **1** of **8**

given by the Plaintiff that such information cannot be relied on as truthful in the paper form, but is still insisting it is appropriate and reasonable, it can be construed that the Defendant's Counsel is intentionally misleading the court and the Plaintiff in its assertion. The Plaintiff has met the burden of proof in demonstrating the provided paper format documents produced by the Defendant to not be most appropriate and reasonable. The court granted permission to investigate the document from its electronic sources and on September 15, 2012 "REQUEST 1" was submitted to the Defendant, and the Defendant refused to comply with the request. As of October 4, 2012, the Defense has decided to disobey the court order and not comply with the request. Since the Defendant failed to comply with "REQUEST 1", the Plaintiff motion for the court to either allow the Plaintiff to submit the alleged email as evidence of an attempt by the Defendant to defraud the civil process and cause further damages to the Plaintiff, compel the Defendant to comply with the said request, or render a default judgment against the Defendant for failing to obey a court order.

## REQUES 1

All request herein is for the production of defendant's items related to, electronic equipments, such as computers, video cameras, email servers, database servers etc, or such requested items are produced on electronic equipments, such as computers, video cameras, email servers, database servers etc, therefore, provide defendant's documents pertaining: 1) asset tracking number, or equivalent as well as 2) location, 3) type of operating system, 4) governing procedures, 5) corporate policies, 6) maintenance schedules, 7) memory and storage capacity, 8) machine type (laptop, desktop, MAC, PC, pad, etc) of computer assigned to or used by Elena Zaretsky, Author Cooperberg, and Slawomir Filipczuk between the dates of April 27th, 2010 and present. All requested documents should be produced no later than October 15, 2012 (day 30 of initial request for this production).

Further support for why it is critical the Defendant complies with "REQUEST 1" is the Defendant was not able to comply with "REQUEST 2"; It is standard practice across a wide range of industries to back up their electronic records on their network servers, and the Department normally responsible for such as task is the Information Technology/Systems (IT, IS, or MIS), and it is widely known that such information gets archived, and almost never gets destroyed due to The **Sarbanes-Oxley** Act. Emails are often backed up on a network server, so that even when deleted from the user's account, it may still be recoverable from the server or archives. If the original email for Defense Exhibit **D000287** was created and sent from Arthur Cooperberg's computer, then it should be recoverable from the Network Email Server or Email archives of the Defendant, if such an email was received in the Inbox of Elena Zaretsky computer, then such emails can be recoverable from the same server. The court can see that the request were carefully tailored not be broad, but to be very specific and not to burden the Defendant. However, the Defendant has claimed it to be broad, irrelevant, and not evidence; if the production of the original

Page **2** of **8**

email is to be considered irrelevant to the case, then so should the forwarded or fraudulent email. However, a forensic examination of the requested items should be answering such a question. Since, the "Defendant is not in possession of additional responsive documentation.", means it is not available in "appropriate" or "reasonable" paper format, the Plaintiff shall be allowed to attempt its recovery or find evidence whether or not it existed on either computers or network email servers. The Plaintiff is willing to have representatives of the Defendant present during the time of examination by the qualified computer forensic specialist. Since the Defendant failed to comply with "REQUEST 1" and "REQUEST 2", the Plaintiff motion for the court to either allow the Plaintiff to submit the alleged email as evidence of an attempt by the Defendant to defraud the civil process, and cause further damages to the Plaintiff, compel the Defendant to comply with the said request, or render a default judgment against the Defendant for failing to obey a court order. See "REQUEST 2" with Defendant's response below:

## "REQUEST NO. 2

Pertaining to email produced during discovery from Defendant, Author Cooperberg sent an email to Elena Zaretsky on July 19, 2010, and forwarded such email to Elena again on April 14th, 2011, 1) Provide both the original and forwarded emails from Author to Elena that has the subject "Nadine" and "FW: Nadine" that were sent by Author and received by Elena on July 19, 2010, and again on April 14th, 2011; both should be printed from Elena's computer using Elena's profile; 2) provide both original and forwarded emails that were sent from Author to Elena on July 19, 2010 and again on April 14th, 2011; both should be printed from Author's computer using Author's profile; 3) provide print screen of Elena's inbox showing an email was received from Author with the subject "Nadine" on July 19, 2010 and April 14th, 2011; 4) provide print screen of Elena's inbox showing an email with the subject "FW: Nadine" was received on April 14th, 2011; 5) provide print screen of Author's outbox showing an email with the subject "Nadine" that was sent to Elena on July 19th, 2010; provide print screen of Author's outbox showing an email with the subject "FW: Nadine" was forwarded to Elena on April 14th, 2011. All requested items should be produced by the Defendant for analysis no later than September 20, 2012.

## OBJECTIONS

Defendant objects to this request on the ground that it was not served at least 30 days prior to the discovery cut-off date.

Defendant further objects to this request on the ground that it is not a more practical method of obtaining the information sought than a deposition.

Defendant further objects to this request to the extent it is overbroad, vague,

Page 3 of 8

ambiguous, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Defendant further objects to this request to the extent it seeks production of electronically stored information, where production of information in paper format is reasonable and appropriate.

### RESPONSE

Without waiving the foregoing objections and to the extent not objected to therein, Defendant states as follows:

See previously produced document designated Bates No. D000287. Defendant is not in possession of additional responsive documentation."

For "REQUEST 3" the Defendant did not comply, and answered only with an objection. Your honor such an objection should not be sustained, and the Defendant should be compelled to produce the items as requested. The Defense has submitted into evidence Work Assignments that has been altered since July 19, 2010, which would prove that the Defendant willfully changed the assignments in order to implement essential functions that were not a part of the assignments prior to the Plaintiff's request for reasonable accommodation on July 19, 2010, so that the Defendant could make the argument that the Plaintiff was not qualified under the ADA of 1990. By changing assignments' requirements after the Plaintiff requested reasonable accommodation, the Defendant essentially constructively terminated the Plaintiff's employment by making it impossible for her to return to work with or without reasonable accommodation. The work assignments submitted into evidenced on paper do not have time and date stamps showing when they were created, modified, and printed, and therefore "information in paper format is" not "reasonable and appropriate" as evidence in this civil proceeding. The electronic records, within their properties have the electronic time and date stamps for when they were created and modified and would therefore be the sources of information that are more reasonable and appropriate within this civil proceedings. Failure of the Defendant to comply with "REQUES 3" should result in the inadmissibility of the submitted work assignment exhibits. The Plaintiff motions for the court to compel the Defendant to comply with "REQUEST 3", deem the submitted exhibits inadmissible, or render a default judgment against the Defendant for failing to obey a court order. See "REQUEST 3" with Defendant's response:

### "REQUEST 3

Pertaining to email produced during discovery from Defendant, Author Cooperberg sent an email to Elena Zaretsky on July 19, 2010, and forwarded such email to Elena again on April 14th, 2011; According to testimony by Chawanda Thomas on August 28th during Deposition, Slawomir Filipczuk is responsible for making changes to work assignments, since the work assignments presented into evidence

Page **4** of **8**

by the Defendant is different from those available to Plaintiff prior to April 27th, 2010  accident, and on July 19th, 2010. The question into when the email and forwarded email was created and sent as well as when changes were made to work assignments arose. To resolve such issues as outlined above, 1) Provide access to Defendant's computers, database, hard drives (internal, and or external), CDs, floppy disks, backup tapes, database, servers (email, and or document), flash drives, thumb drives, and memory sticks, or produce Defendant's computers, database, hard drives (internal, and or external), CDs, floppy disks, backup tapes, database, servers (email, and or document), flash drives, thumb drives, and memory sticks that are assigned to or used by Elena Zaretsky, Author Cooperberg, and Slawomir Filipczuk between the dates of April 27th, 2010 and present for copying, scanning, imagining, and or analysis by a Certified Computer Forensic Specialist as approved by Magistrate Honorable Judge Pitman on September 10, 2012. All requested items should be produced by the Defendant for analysis no later than September 20, 2012."

## GENERAL RESPONSE TO THE CERTAIN OBJECTIONS:

In accordance with Rule 26 and 33, the Judge has authority to grant extensions of deadlines, and the deadline for discovery was extended for both Plaintiff and Defendant; additionally the rules allow for additional discoveries when such discoveries are based on information obtained during deposition or interrogatories responses. Therefore, Defendants objection that request was not made within 30 days of discovery cut-off date should be waived, especially since the Defendant also made request past the discovery cut-off date.

In Response to the Defendant's Objection to a request on grounds there is a more practical method of obtaining the information sought than a deposition, the Defendant's assertion is debunked, since the Defendant failed to comply with the requests using one of the practical method to which it alluded. The Defendant has demonstrated that it has knowledge of a way in which it can comply with the request, but has even not obeyed the request using such method.

In Response to the Defendant's Objection to a request on grounds it is overbroad, vague, ambiguous, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, this assertion by the Defendant  is debunked, since the Plaintiff has provided carefully crafted requests that clearly identified items in request, and that such request are in fact very relevant to the case at hand . The court, herein will, and may see that the requests are not as represented by the Defendant.

In Response to the assertion the Defendant further objects to this request to the extent it seeks production of electronically stored information, where production of information in paper format is reasonable and appropriate. In a Civil case in which dates and times of when certain events occurred can be most relevant, the Defendant has produced documents in evidence, which does not show time

Page 5 of 8

and date stamps for when the documents were created, modified, and printed. Even, if the paper format had such information printed on it, the electronic file property is the only source from which such information can be authenticated with the least amount of uncertainty. Since the electronic documents' property would contain at least the time and date stamps for when a document was created and modified, the information in the paper format is neither the most appropriate nor reasonable. The Defendant's claim has been debunked. Had the work assignments been a hand written documents, which is not the case in this instance, then the paper format would have been the only trusted source (reasonable and appropriate).

The Plaintiff will respond to Objection to "REQUEST 4" in a separate motion.

The Plaintiff was afforded the rights to motion against the Defense non-compliance to requests made and approved the court by the rule 37, and asks that the court consider sanctions as appropriately outlined by the rule and as the court sees fit.

Rule 37 - Failure to Comply with a Court Order.

(1) *Sanctions in the District Where the Deposition Is Taken.* If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court.

(2) *Sanctions in the District Where the Action Is Pending.*

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

(B) *For Not Producing a Person for Examination.* If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)–(vi), unless the disobedient party shows that it cannot produce the other person.

Page **6** of **8**

(C) *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.

(1) *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).


                              Respectfully submitted,


                              Nadine Thompson
                              137 Beechwood Avenue
                              Mount Vernon New York 10553
                              646-387-4582
                        By: Nadine Thompson


Dated: October 6, 2012
       New York, New York

## DAVID S. CAPELLI, MBA, CFC, CCE
### Digital Forensic Examiner

9 Tanner Street, West Entry                        (856) 428-0878 (Office)
Haddonfield, NJ 08033                            (856) 428-9401 (Fax)
Email: dcapelli@placidoverna.com         (609) 238-8795 (Cell)
Web: www.placidoverna.com, www.pvlforensics.com

### PROFESSIONAL SUMMARY

Technology-business founder & owner with over 20 years experience in technology, marketing, finance, and administration. Diverse background with specific experience and expertise in computers, computer forensics technology and all levels of system implementation including: software design, application development & deployment, end-user training, support, managed services, configuration of all aspects of hardware and software including workstations, LANs, WANs, VPNs.

Regularly conduct forensic computer examinations, digital investigations, data recovery & data collection operations and electronic discovery processes. Certified Forensic Consultant (CFC) from the American College of Forensic Examiners International, Certified Computer Examiner (CCE) from the International Society of Computer Forensic Examiners (certification #714) and Access Data Certified Examiner (ACE) from Access Data Corporation. Strengths include analysis, organization, communication, problem solving and design. Highly motivated, diligent, and reliable professional. Able to work under pressure and ability to face new challenges.

### PROFESSIONAL EXPERIENCE (1987 – present)
### CAPCOM, Incorporated & Placido Verna Limited, Haddonfield, NJ

*CAPCOM, Incorporated* (December 1987) – software developer     *Placido Verna Limited* (February 2007) – computer forensics, e-discovery & data recovery

**Computer Forensic Career Highlights:**

✓ Conduct all levels of forensic computer work including:

   o Conduct examinations for all forms of business, personal, civil and domestic cases.
   o Experience with large and small scale civil and domestic investigations involving intellectual property, trade secret theft, fraud, employee misconduct, network intrusion, and divorce.
   o Conduct all levels of data recovery processes including restoration of all forms for data.
   o Examination of all forms of digital equipment including: servers, workstations, laptops, RAID configurations, USB/external drives, CDs, floppy disks, cellular devices, smart phones, PDAs, DVRs, & GPS devices.
   o Creation of bit-stream drive images in various forensic formats, conduct forensic computer examinations, digital investigations, electronic discovery services and data recovery services.
   o Use of various court-accepted forensic hardware and software including imaging equipment, write-blockers, forensic workstations and various examination software applications.
   o Preparation of chain of custody forms, evidence worksheets, forensic examination reports, affidavits & declarations.
   o Understanding of the Federal Rules of Civil Procedures (FRCP) & Federal Rules of Evidence regarding digital media, security and privacy laws, HIPAA regulations, chain of custody and evidence handling.

✓ Computer Forensic Speaking Engagements:

   Conduct CLE (Continuing Legal Education) computer forensics and e-discovery seminars for the following bar associations (Approved by the Board on Continuing Legal Education of the Supreme Court of New Jersey & Pennsylvania):

   o Middlesex County (NJ) Bar
      • *"Computer Forensics & The Discovery of Electronic Information"*
      • *Middlesex County Bar Assoc. Office, New Brunswick, NJ*
      • *August 2012*

   o New Jersey Bar Association
      • *"E-Discovery & Computer Forensics: Practical Solutions for the Smaller Case"*
      • *NJ State Bar Annual Convention, Atlantic, City, NJ*
      • *May 2012*

- 1 -

- o Camden County (NJ) Bar
  - *"Computer Forensics & E-Discovery: How It Works"*
  - *Tavistock Country Club, Haddonfield, NJ*
  - *January 2012*

- o Burlington County (NJ) Bar
  - *"Computer Forensics & E-Discovery: How It Works"*
  - *County Office Building, Mt. Holly, NJ*
  - *January 2011*

- o Middlesex County (NJ) Bar
  - *"Computer Forensics & The Discovery of Electronic Information"*
  - *Middlesex County Bar Assoc. Office, New Brunswick, NJ*
  - *December 2010*

- o Gloucester County (NJ) Bar
  - *"Computer Forensic Examination: The Discovery of Electronic Information"*
  - *Gloucester County Office of Education, Sewell, NJ*
  - *October 2008*

✓ Computer Forensic Articles Published:

- Middlesex County (NJ) Bar Association - The Middlesex Advocate
  - *"Digital Evidence & The Federal Rules" – March 2008*

- Gloucester County (NJ) Bar Association – The Per Curiam
  - *"Computer Forensics: I deleted it, so no one will ever see it" – July 2007*
  - *"Digital Evidence & The Federal Rules" – January 2008*

- Holland Media, LLC - SNJ Business People
  - *"Digital Evidence & The Federal Rules" – January 2008*

- o Extremely knowledgeable with many forensic software applications including:
  - AccessData: FTK, Registry Viewer, PRTK, & Imager, Xways Forensics, OnTrack, Data Lifter, Simple Carver, NetAnalysis, Links, Internet Evidence Finder, MetaData Assist, MetaData Miner, RegRipper, Amber ABC, BitPim, Paraben Device Seizure, Paraben P2, Paraben Email Examiner, Forensic Suite, Diskedit, Lost Password, & ISO Buster.

- o Extremely knowledgeable with forensic hardware from industry-leading manufactures including:
  - Digital Intelligence, ICS, Logicube, Tableau, & Cellebrite

**Computer Career Highlights:**

✓ Other technical highlights including:

- o Achieved Certification of Novell's network operating system.
- o Designed, develop and test software applications for specific vertical markets.
- o Completed HP/Compaq technical hardware training on all aspects of PC based equipment.
- o Complete web site design, development and deployment with Adobe products.
- o Installed and configured PCs and PC-based networks, servers, LANs, WANs, & VPNs.
- o Implemented and supervised end user-training, upgrades and help desk support.

### UNDERGRADUATE & GRADUATE EDUCATION

- o Philadelphia University, Philadelphia, PA – MBA 1995
- o Villanova University, Villanova, PA – BS 1987

## COMPUTER FORENSIC CERTIFICATIONS

o *AccessData Corporation* – AccessData Certified Examiner (ACE), July 2009
o *International Society of Forensic Computer Examiners* – Certified Computer Examiner (CCE), May 2007

## OTHER FORENSIC CERTIFICATIONS

o *American College of Forensic Examiners International* – Certified Forensic Consultant (CFC), August 2010

## FORENSIC: TRAINING & CONTINUING EDUCATION

o *Key Computer Systems, Brentwood, TN* - Certified Computer Examiner Boot Camp, April 2007
o *AccessData Corporation, Lindon, UT* – Internet Forensics Training, July 2009
o *AccessData Corporation, Lindon, UT* - MAC Forensics Training, Nov 2010
o *AccessData Corporation, Lindon, UT* – Windows 7 Forensics Training, Apr 2011
o *AccessData Corporation, Lindon, UT* – FTK Users Conference, May 2011, May 2012
o *AccessData Corporation, Lindon, UT* – Call Detail Records & GPS Devices, June 2012
o *X-Ways Software Technology AG, Cologne Germany* – X-Ways Forensics Training, Dec 2011
o *Seak, Inc., Falmouth, MA.* – Expert Witness Training, June 2010
o *American College of Forensic Examiners International, Springfield, MO* – CFC Training, Aug 2010
o *The Journal of Digital Forensics, Security & Law, Farmville, VA* – Digital forensics publication, 2007 - present
o *International Society of Forensic Computer Examiners, Brentwood, TN* – CCE List Serves, 2007 - present

## OTHER TECHNICAL TRAINING

o *Novell, Inc. Computer Corporation* - Network Engineer Training, 1989 -1996
o *HP/Compaq* – Technical & Sales Training, 1990 - 1998

## PROFESSIONAL DEVEOLOPMENT & MEMBERSHIPS

o Member - International Society of Forensic Computer Examiners, 2007 - present
o Member - American College of Forensic Examiners International , 2010 – present
o Member - The Consortium of Digital Forensic Specialists, 2011 - present
o Notary Public – State of New Jersey, 2001 – present





**placido verna** LTD.

a division of CAPCOM, Inc.

9 Tanner Street, West Entry, Haddonfield, NJ 08033 – 856.428.0878 (p) – 856.428.9401 (f)

This AGREEMENT made on this the _____ day of _____, 20____ between Placido Verna

Ltd., (a division of CAPCOM, Inc.) and _____ (herein referred to

as "Client" ) with an address of _____

Case Name: _____   Case Number: _____   Evidence Number(s): _____

1. **Placido Verna Ltd., Responsibility.** Placido Verna Ltd., Inc. agrees to perform computer forensic services for said Client, including but not limited to: the listed computer(s), floppy disk(s), magnetic tape(s), hard disk drive(s), CD(s), multimedia device(s), flashcard(s), thumb drive(s), PDA(s), cell phone(s) or any other related material or storage media for purpose of imaging, examining and/or recovering information including, but not limited to, letters, correspondence, memoranda, journals, electronic mail, image (picture) files, database files, deleted items, partial files, or other types of files found in the media or computer. For the purpose of developing the information that Client so requests as more specifically described in the Preliminary Examination Checklist or as set forth in a valid subpoena or court order provided by the client. Client acknowledges that if Placido Verna Ltd. discovers any documents, things, or materials which in Placido Verna Ltd's sole and absolute discretion may constitute felony level contraband, Placido Verna Ltd. has a legal and ethical obligation to notify law enforcement officials immediately and Placido Verna Ltd. will do so. Client shall release and hold harmless Placido Verna Ltd. of and from any and all rights of actions, demand, liability and all claims relating to or arising out of any disclosure by Placido Verna Ltd. to law enforcement authorities.

2. **Examination Results**. – Placido Verna, Ltd. has no control and therefore, can accept no responsibility over the final results of the examination as per paragraph 1 above. While the client can request for specific files, keywords, and other relevant data to be located on the supplied media, Placido Verna, Ltd. can not guarantee the recovery of any files, keywords, data and/or other electronic information due to circumstances beyond their control including, but not limited too: non-existence of requested files, keywords, or other data on supplied media, lack of technology available to recover such information and/or unreadable media.

3. **Forensic Guidelines** – The International Society of Forensic Computer Examiners (ISFCE) has developed a specialized certification program (Certified Computer Examiner – CCE) and is the governing body of Certified Computer Examiners. The ISFCE has also developed and maintains a strict code of Ethical Conduct and Professional Standards to which all certified organizations must adhere. Placido Verna shall utilize only certified individuals for the purpose of this investigation and analyzation and will adhere to the Ethical Conduct and Professional Standards set by the ISFCE.

4. **Client Responsibility.** The client hereby authorizes and has the legal authority to permit Placido Verna, Ltd. to take computer equipment and/or data into his possession and analyze and/or create

images of said computer equipment and/or data. The client takes full responsibility for providing Placido Verna, Ltd. with this authority, and Placido Verna, Ltd., its employees, its assigns, and its associates will be held harmless for any actions, suits, claims, losses, damages, costs, and liabilities arising from the provision of said computer equipment and/or data provided for imaging, examination and/or analysis. In the event that Placido Verna, Ltd., its employees, its assigns, or its associates are made a party to any action, suit, or claim arising from the possession and/or examination of said computer equipment and/or data, client agrees to reimburse Placido Verna, Ltd., its employees, its assigns, and its associates for any expenses incurred for their defense against such actions, suits, or claims.

Client agrees to fully cooperate with and participate to the extent requested by Placido Verna in any work performed by Placido Verna Ltd. Client agrees that they will provide Placido Verna Ltd. with any and all information Placido Verna so requests, which is necessary for the performance of Placido Verna Ltd., obligations under this agreement.

5. **Scope of the Agreement.** The scope of this agreement is set forth and defined in the Preliminary Examination Checklist or as set forth in a valid subpoena or court order provided by the client, as periodically may be attached hereto. The parties agree that this Agreement, the integrated Preliminary Examination Checklist (as outlined herein), the chain of custody form(s) and any subpoena or order attached and referenced in the Checklist where applicable constitute the entire agreement of the parties.

6. **Chain of Custody Form(s).** At any time, should evidence change parties, then Appendix A of this agreement must be completed at the time evidence is acquired. All associated chain of custody form(s) will become part of this agreement.

7. **Testifying.** Placido Verna, Ltd. and/or its representatives agree to testify on behalf of the Client, in proceedings relating to the case identified above. Placido Verna shall testify to the best of its knowledge, information and belief. Placido Verna, Ltd. assumes no responsibility for and is in no way liable for the final outcome or determination of any legal matter relating to the above case.

Placido Verna, Ltd. shall make reasonable efforts to accommodate the testimony schedule of the client and/or case.

Placido Verna, Ltd. time spent in transit to and from, preparation for, attendance upon and giving of such testimony shall constitute consulting services for Client pursuant to this agreement and, Client shall compensate Consultant for such time and associated expenses according to the testifying fees schedule below whether or not Placido Verna, Ltd., testifies in the case.

As used in this paragraph, "testimony" or "called to testify" includes, not by way of limitation, testimony in court, grand jury or congressional testimony, testimony or otherwise appearing before any Federal, state or municipal entity, deposition testimony, provision of assistance in responding to written discovery including but not limited to interrogatories, requests for production of documents or other materials or requests for admission and, appearance pursuant to subpoena, and the provision of a statement and/or testimony by way of affidavit, certification, attestation and/or sworn statement.

8a. **Service & Exam Fees**. In consideration of Placido Verna Ltd., Inc. performance of the services as set forth in this agreement, Client shall pay Placido Verna Ltd., Inc. and is responsible for all costs as follows:

A.      Initial Evidence Imaging/Acquisitions; Review; Analyze; Consultations are billed at the rate of $225.00 per hour plus storage expenses if any. Any work after business

hours (outside of 9am to 5pm) and weekends (Saturday & Sundays) are billed at 1.5 times the regular rate ($337.50).

B.    Any additional tech(s) performing on site work, in addition to the first tech in A above, are billed at $125. per hour (business hours) and $187.50 per hour (after business hours) plus any applicable travel fees. This applies when two or more techs are on-site simultaneously.

C.    Client shall immediately upon execution of this Agreement provide an initial retainer fee in the amount of **$1,500.00.** Placido Verna Ltd., Inc. will not conduct any work pursuant to this Agreement until the initial retainer is received.

D.    Client shall pay a minimum charge under this agreement. Said minimum charge is $1,500.00. Client acknowledges that said minimum charge is due immediately upon signing of the agreement. This amount is deducted from retainer fee.

E.    Once the initial retainer has been reduced to a balance of $200.00, client will be notified and billed for an additional five (5) hours of service time. Work will not continue until the second retainer is received. This process will continue in one half hour (1/2) blocks until the case is completed or the client has advised Placido Verna Ltd., in writing, to cease working on the case.

F.    Client will be billed for any media, media supplies and shipping costs that are incurred as a result of this agreement. All media, media supplies and shipping charges are billed to the client at the same cost to that of Placido Verna Ltd.

G.    Auto travel is billed at the rate of .45 per mile or a flat $50. per two-way trip – whichever is higher, plus $75. for each hour of travel time. Any travel relating to this case that requires air, auto, hotel, & other travel related fees will be the financial responsibility of the client.

H.    Any other reasonable costs incurred by Placido Verna Ltd. as a result of this case. All such costs will be made know to client prior to acquiring the needed product(s) or performing the required service(s).

**8b. Testifying Fees.** Client shall pay Placido Verna Ltd., Inc. the following testifying fees as follows:

I.    All non-testifying time (i.e. preparation, counsel meetings, etc.) is billed at the full rate as set forth in 8a(A) above.

J.    All time spent testifying is billed at the full rate as set forth in 8a(A) above.

K.    All travel expenses/costs relating to this case that requires air, auto, hotel, & other travel related fees will be the financial responsibility of the client.

L.    Meal allowance is billed to the client at the cost of $35. per day.

M.    Any other reasonable costs incurred by Placido Verna Ltd. as a result of this case. All such costs will be made know to client prior to acquiring the needed product(s) or performing the required service(s).

N.    All fees above relating to testifying are due in advance of any testifying work.

Placido Verna Ltd., Inc. agrees to keep and record all time spent working on Client's case.

**9. Responsibility for Fees.** Client understands and acknowledges that client is solely responsible for all payment of Fees to Placido Verna Ltd. Should Client be contracting for the services of Placido Verna Ltd. on behalf of someone else this shall in no way affect the responsibility of Client to pay for all services furnished under this agreement including all attorney fees, litigation expenses and court costs. Any outside agreement between Client and a third party shall in no way become integrated into this agreement. Placido Verna Ltd. may at its sole and absolute discretion require a personal guaranty from a principal or other person associated with Client. Client is responsible for all costs & fees associated with preparation for testimony even if representative from Placido Verna, Ltd. does

not actually testify. This includes, but is not limited too, computer examination work, report & exhibit preparation, attorney meetings, client meetings, in-person and phone conferences. Client is responsible for payment regardless of any outcome of any legal matter relating to the case noted above.

10. **Collections**. Client acknowledges and agrees that any and all costs, expenses including attorney's fees related to the collection of any monies owed to Placido Verna Ltd., will be the responsibility of the Client.

11. **Past Due Accounts**. Client acknowledges that any past due account will incur interest charges to the extent they are allowable under New Jersey Law.

12. **Expenses**. Expenses incurred in the necessary course of the active case, including but not limited to: travel, hotel, airfare, etc. will be reimbursed by Client. The parties agree that the expenses will be approved in writing by Client in advance where reasonably possible. Placido Verna Ltd., will submit invoices and receipts for all expenses related to the case.

13. **Storage Fees.** The parties acknowledge that there will be times when the data related to the case must be preserved and stored at various intervals during the case, or at the conclusion of said case, if it is so necessary. Forensic images, data, and other media related to a lawsuit will be retained by Placido Verna, Ltd. for a period of one (1) year from receipt of such material from Client or until such lawsuit is settled or otherwise ends, whichever is sooner ("Retention Period"). After the Retention Period, the images and/or other media will either be destroyed or retained unless client provides written instructions within thirty (30) days prior to the end of the Retention Period. If Client instructs Placido Verna to retain the images and/or media, Client shall pay a monthly storage fee. The parties acknowledge that the initial retainer paid, as outlined in Section 8(c), does not cover the cost of storage of the data and a new retainer agreement will be secured to cover said fees. Client may also request to store data at their facility, office, or other secure location. Placido Verna, Ltd. will provide said data and client is responsible for any shipping or material charges incurred as a result of this. Placido Verna shall in no way be held responsible by the client and client shall release and hold harmless Placido Verna from any claims, damages or liability relating to or arising out of the destruction of the materials by Placido Verna.

14. **Subpoena.** If Placido Verna receives a subpoena seeking the production of any of the information or materials relating to this Agreement that are still within Placido Verna, Ltd.'s custody or control, Placido Verna, Ltd. will give prompt notice of such subpoena to Client in advance of its compliance. In the event Client seeks to oppose or object to a subpoena served upon Placido Verna Ltd., Client shall do so at Client's sole cost and expense. Any costs, including attorney's fees, incurred by Placido Verna Ltd. as a result of a subpoena served upon Placido Verna Ltd. relating to Client shall be the sole and absolute responsibility of client.

15. **Independent Contractor.** The parties intend that Placido Verna Ltd. will be an independent contractor in the performance of any and all services relating to the agreement. Placido Verna Ltd. shall have the right to control and determine the method and means of performing the service necessitated by this agreement.

16. **Sub-contractor.** Placido Verna, Ltd. may sub-contract all or part of the services to be performed pursuant to this agreement if Placido Verna, Ltd. determines in its sole and absolute discretion it is in the best interest of the client. All terms for this contract will remain in full force should all or part of this agreement be sub-contracted.

17. **Other Clients.** Placido Verna Ltd. retains the right to perform services for other Clients except those that may cause conflict of interest to this case.

18. **Insurance and Taxes.** Both the client and Placido Verna Ltd. agree that Placido Verna Ltd. will act as an independent contractor in the performance of its duties under this contract. Placido Verna Ltd. is responsible for all income taxes unemployment insurance, and social security taxes, arising out of Placido Verna Ltd's activities in accordance with contract and will maintain workers' compensation insurance for any and all employees of Placido Verna Ltd.

19. **Confidentiality.** ALL information gathered by Placido Verna Ltd. for Client's specified case is for Client only and will be kept confidential by Placido Verna Ltd. Not withstanding the foregoing, in the event that Placido Verna has been retained by the client to conduct services associated with litigation all information obtained and/or retrieved by Placido Verna shall be treated as confidential and used by the client and Placido Verna for the purposes of preparing for a conducting pretrial and trial proceedings and appeals, if any, and for no other purpose. Only information gathered within an agreed upon order and scope defined therein will be reported. All other information will need to be added to checklist as information/scope may change. Client acknowledges that all techniques / procedures /methodologies/ Scripts / software used by Placido Verna Ltd. to obtain information for the Client will be kept confidential by both parties. Client agrees and represents not to disclose the Placido Verna confidential information or use such confidential information for any purpose other than as permitted in writing by Placido Verna. Client agrees not to disclose Placido Verna's confidential information to anyone other than those persons in its employ.

20. **Responsibility.** Placido Verna Ltd. shall not be liable for any actions pertaining to services provided to client or this case due to failure(s) of any hardware, data, or information acquired during investigation of failure(s). Client hereby agrees to indemnify and hold Placido Verna Ltd. harmless from any such liability.

21. **Governing Law.** Previsions of this Agreement will be interpreted and governed by the laws of the State of New Jersey.

22. **Modification.** Regardless of any oral conversations, no variations or modification to the agreement will be valid and effective unless in writing and executed by both parties. This is the entire agreement between the parties and cannot be changed or modified orally.

23. **Validity Agreement**. Should any paragraph, clause, segment, part, or covenant of this contract be held unenforceable, the remaining portions of this agreement shall remain in full force and effect.

24. **Plurality**. Where the singular pronoun is used herein as referring to Client, and it appears that more than one person constitutes the Client, then the singular pronoun shall be construed as plural, and when Client consists of more than one person, Client's obligations hereunder shall be joint and several.

25. **Termination.** Each of Placido Verna Ltd. and the Client shall be free to terminate this Agreement at any time for cause upon written notice to the other Party upon written notice. The grounds for reasonable cause shall include: material violation of this agreement and/or any act exposing the other party to liability for personal injury or property damage. In the event of a termination by either Placido Verna Ltd. or the Client, the Client shall remain responsible for all fees for professional services rendered and fees, costs, and expenses incurred or advanced through the date of termination. Placido Verna Ltd. will work with the Client to effect an orderly transition of the Matter to the Client or substitute consultant.

26. **No Authority to Bind Client.** Placido Verna Ltd. has no authority to enter any contracts or agreements on behalf of the client.  This agreement does not create a partnership between the parties.

27. **Non-waiver.** The failure of either party to this Agreement to exercise any of its rights under this agreement at any time does not constitute a breach thereof and shall not be deemed to be a waiver of such rights or a waiver of any subsequent breach.

28. **Notices.** Any notice given in connection with this Agreement shall be given in writing and delivered either by hand to the party or by certified mail, return receipt requested, or by fax to the party at the party's address stated herein.  Any party may change its address stated herein by giving notice of the change in accordance with this paragraph.

Entered into the date as mentioned above herein:

**Placido Verna Ltd.,**                          **Client:**
**(a division of CAPCOM, Inc.)**

David S. Capelli, CFC, ACE, CCE
Duly Authorized Representative          Duly Authorized Representative
Of Placido Verna, Ltd.                        Of Client

_____          _____
Signature                                       Signature

_____          _____
Dated                                            Dated



placido verna LTD.
computer forensics + e-discovery + data recovery

### *Preliminary Examination Checklist*

Summary for the Scope of Work - Purpose of this examination

_____

_____

_____

_____

_____

_____

☐   If applicable, has a court been issued concerning this specific examination? If so, please attach copy.

Yes ____          No ____

☐   List the make & model of the equipment & devices to be examined (servers, desktops, laptops, cellular devices, external drives & other media). Provide media capacity if possible.

_____

_____

_____

_____

_____

_____

_____

1

☐     Where is the equipment currently located?

_____

_____

☐     What are the times, dates, etc. . . guidelines of time period(s) to investigate?

_____

_____

☐     Who could have had access to this computer at given time(s)?

_____

_____

_____

_____

☐     Is there any security implemented on this system (i.e. ROM BIOS passwords, disk encryption, etc.)? If so, describe.

_____

_____

_____

☐     Do any other special circumstances exist that we need to be made aware of concerning this equipment or this examination? If so, please describe.

_____

_____

_____

2

☐   List of search criteria.  Names, Phrases, Words, Filenames, File types, to search for.

| | | |
|---|---|---|
| 1_____ | 23_____ | 43_____ |
| 2_____ | 24_____ | 44_____ |
| 3_____ | 25_____ | 45_____ |
| 4_____ | 26_____ | 46_____ |
| 5_____ | 27_____ | 47_____ |
| 6_____ | 28_____ | 48_____ |
| 7_____ | 29_____ | 49_____ |
| 8_____ | 30_____ | 50_____ |
| 9_____ | 31_____ | 51_____ |
| 10_____ | 32_____ | 52_____ |
| 11_____ | 33_____ | 53_____ |
| 12_____ | 32_____ | 54_____ |
| 13_____ | 33_____ | 55_____ |
| 14_____ | 34_____ | 56_____ |
| 15_____ | 35_____ | 57_____ |
| 16_____ | 36_____ | 58_____ |
| 17_____ | 37_____ | 59_____ |
| 18_____ | 38_____ | 60_____ |
| 19_____ | 39_____ | 61_____ |
| 20_____ | 40_____ | 62_____ |
| 21_____ | 41_____ | 63_____ |
| 22_____ | 42_____ | 64_____ |

**jackson|lewis**

Attorneys at Law

Representing Management Exclusively in Workplace Law and Related Litigation

Jackson Lewis P.C.
666 Third Avenue
New York, New York 10017
Tel 212 545-4000
Fax 212 972-3213
www.jacksonlewis.com

| ALBANY, NY | GRAND RAPIDS, MI | NAPA, CA | RALEIGH-DURHAM, NC |
| ALBUQUERQUE, NM | GREENVILLE, SC | NEW ORLEANS, LA | RAPID CITY, SD |
| ATLANTA, GA | HARTFORD, CT | NEW YORK, NY | RICHMOND, VA |
| AUSTIN, TX | HOUSTON, TX | NORFOLK, VA | SACRAMENTO, CA |
| BALTIMORE, MD | INDIANAPOLIS, IN | OMAHA, NE | SAINT LOUIS, MO |
| BIRMINGHAM, AL | JACKSONVILLE, FL | ORANGE COUNTY, CA | SAN DIEGO, CA |
| BOSTON, MA | LAS VEGAS, NV | ORLANDO, FL | SAN FRANCISCO, CA |
| CHICAGO, IL | LONG ISLAND, NY | OVERLAND PARK, KS | SAN JUAN, PR |
| CINCINNATI, OH | LOS ANGELES, CA | PHILADELPHIA, PA | SEATTLE, WA |
| CLEVELAND, OH | MEMPHIS, TN | PHOENIX, AZ | STAMFORD, CT |
| DALLAS, TX | MIAMI, FL | PITTSBURGH, PA | TAMPA, FL |
| DAYTON, OH | MILWAUKEE, WI | PORTLAND, OR | WASHINGTON, DC REGION |
| DENVER, CO | MINNEAPOLIS, MN | PORTSMOUTH, NH | WHITE PLAINS, NY |
| DETROIT, MI | MORRISTOWN, NJ | PROVIDENCE, RI | |

MY DIRECT DIAL IS: (212) 545-4041
MY EMAIL ADDRESS IS: ShawR@JacksonLewis.com

February 13, 2015



RECEIVED
FEB 17 2015
CHAMBERS OF
HENRY PITMAN
U.S.M.J.

**VIA OVERNIGHT MAIL**
Honorable Henry B. Pitman
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:   Nadine Thompson v. Workmen's Circle MultiCare Center
      S.D.N.Y. Case No. 11 CV 6885 (DAB) (HBP)

Dear Judge Pitman:

We represent Defendant Workmen's Circle MultiCare Center in the above-referenced employment discrimination case. Please note that Plaintiff is proceeding *pro se*. In accordance with Your Honor's instructions at the February 11, 2015 status conference, we are enclosing a courtesy copy of the transcript of Plaintiff's August 30, 2012 deposition and Plaintiff's errata sheets in connection with Defendant's November 12, 2012 letter motion requesting that the Court issue an Order deeming the objections asserted in Plaintiff's errata sheets waived and precluding the use of the errata sheets in any further proceedings in the case.

Thank you for your attention to this matter.

Very truly yours,

JACKSON LEWIS P.C.

Ravindra K. Shaw

Enclosures
cc:   Nadine Thompson (via e-mail and overnight mail) (w/o enc.)
      Eric P. Simon, Esq. (via e-mail) (w/o enc.)

4821-2830-1090, v. 1